**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IRANIAN AMERICAN LEGAL DEFENSE FUND<br>1901 Pennsylvania Ave. NW, Suite 900<br>Washington, DC 20006,<br><br>       *Plaintiff,*<br><br>v.<br><br>U.S. DEPARTMENT OF STATE<br><br>  2201 C Street NW<br>  Washington, DC 20520<br><br>U.S. CUSTOMS AND BORDER PROTECTION,<br><br>  1300 Pennsylvania Avenue NW<br>  Washington, DC 20229<br><br>and<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>  500 12th Street SW<br>  Washington, DC 20536<br><br>       *Defendants.* | **Civil Action No. _____** |

**COMPLAINT**

1. The Iranian American Legal Defense Fund brings this action to compel overdue disclosure by the U.S. Department of State, U.S. Customs and Border Protection, and U.S. Immigration and Customs Enforcement regarding a matter of urgent public importance: the orchestrated removal of Iranian nationals from the United States to the Islamic Republic of Iran—a country

where those returned face not hypothetical, but documented systematic risk of persecution, torture, and death.[1]

2.  In an extraordinary diplomatic maneuver between two governments with no formal relations and against the backdrop of 47 years of hostilities between the two nations, the Trump administration reached an unprecedented agreement with the Islamic Republic of Iran to jointly coordinate mass deportation flights to Iran, forcing the return of Iranian nationals who fled the oppression of the Islamic Regime.[2] The first deportation flight—intending to carry 120 people—arrived in Tehran via Qatar in October 2025.[3] Second and third flights followed in December 2025 and January 2026 carrying at least 65 more.[4] The third flight occurred just weeks after the Islamic Regime massacred tens of thousands of peaceful protestors, imprisoned an estimated 50,000 more, and maimed, or seriously injured likely hundreds of thousands.[5] At least 124 people have been sent back in three separate flights since September 2025.[6] Another flight was scheduled for March 2026 which was subsequently cancelled due to the armed conflict between the two countries. The administration has indicated it intends to deport at least 400 Iranian nationals under its secretive agreement with the Islamic Regime.[7]

---

[1] U.S. Dep't of State, 2024 Country Reports on Human Rights Practices: Iran (Aug. 12, 2025), https://www.state.gov/reports/2024-country-reports-on-human-rights-practices/iran.

[2] Farnaz Fassihi & Hamed Aleaziz, *U.S. Deports Planeload of Iranians After Deal With Tehran, Officials Say*, N.Y. Times (Sept. 30, 2025), https://www.nytimes.com/2025/09/30/world/middleeast/us-iran-deportation-flight.html.

[3] *Id*.

[4] Farnaz Fassihi, *U.S. Deports Second Planeload of Iranians, Officials Say*, N.Y. Times (Dec. 7, 2025), https://www.nytimes.com/2025/12/07/world/middleeast/us-deports-second-planeload-iranians.html.

[5] Human Rights Activists in Iran, *The Crimson Winter: A 50 Day Record of Iran's 2025–2026 Nationwide Protests* (2026), https://www.hra-iran.org/the-crimson-winter-a-50-day-record-of-irans-2025-2026-nationwide-protests/.

[6] Philip Wang, *The Iranians Stuck Between ICE Detention and Deportation to War-Torn Homeland*, TIME (Mar. 27, 2026), https://time.com/7262917/iranians-ice-detention-deportation-iran/.

[7] *Id*.

3. These mass deportations mark a sharp break from decades of U.S. practice since the 1979 Islamic Revolution, under which Iranian dissidents and asylum seekers fleeing religious, sexual, or political persecution were generally afforded an opportunity to present their claims, and Iranian applicants have historically obtained protection at meaningful rates. They also implicate bedrock principles of U.S. and international law prohibiting refoulement: Article 33 of the 1951 Refugee Convention, as incorporated through the 1967 Protocol, prohibits returning individuals to territories where their life or freedom would be threatened. Article 3 of the Convention Against Torture independently bars removal where there are substantial grounds to believe an individual would face torture. Congress codified these protections into domestic law through the Immigration and Nationality Act, including INA § 208, 8 U.S.C. § 1158, and INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), as well as FARRA § 2242 and implementing regulations at 8 C.F.R. §§ 208.16–208.18 and 1208.16–1208.18. Together, these provisions require the United States to provide a meaningful opportunity to seek asylum, withholding of removal, and CAT protection before removing individuals to countries where such risks exist.[8]

4. The dangers facing those returned are not abstract. According to the U.S. Department of State's own 2024 Country Report on Human Rights Practices in Iran, the government of the Islamic Republic executed hundreds of prisoners in 2024 alone—many of whom were subjected to coerced confessions and denied fair trials.[9] Political prisoners, including individuals detained

---

[8] 8 U.S.C. § 1231(b)(3) (2024); Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102 (codified as amended in scattered sections of 8 U.S.C.); Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 112 Stat. 2681, 2681-822 (codified at 8 U.S.C. § 1231 note) (implementing the 1951 Refugee Convention and the Convention Against Torture, and protecting those with a well-founded fear of persecution based on five protected grounds: race, religion, nationality, membership in a particular social group, or political opinion).
[9] U.S. Dep't of State, *supra* note 1, at 2.

in connection with the Woman, Life, Freedom movement, were arrested, sentenced to prison and death, subjected to torture, or executed during the year. [10] The State Department's report further documents severe abuses: arbitrary and unlawful killings, enforced disappearances, cruel and degrading treatment, suppression of free expression, and persecution of religious minorities. [11] Independent observers have reported escalating repression and executions by the Iranian Regime at levels not seen in decades. [12]

5. The individuals sent back on these flights are precisely those the prohibition on refoulement exists to protect. Many are political dissidents who risked their lives opposing the Islamic Republic during the Woman, Life, Freedom movement. The Woman, Life, Freedom movement ignited in September 2022, after 22-year-old Mahsa (Jina) Amini, a Kurdish Iranian woman, died in the custody of Iran's morality police following her arrest for allegedly violating the country's mandatory hijab laws. Also among those deported or facing deportation are members of the LGBTQ community—in a country where homosexuality is punishable by death—as well as Christian converts and other religious minorities. [13][14] An attorney representing one gay man facing deportation stated he "calls every 45 minutes begging me to save his life." [15] Another man, placed in a restraint jacket and chained to his seat by U.S. Immigration and Customs Enforcement officers, was forcibly loaded onto a deportation flight

---

[10] *Id.*

[11] *Id.*

[12] Mai Sato (Special Rapporteur), *Situation of Human Rights in the Islamic Republic of Iran in 2025 and the Nationwide Protests*, U.N. Doc. A/HRC/61/59 (2026).

[13] *See, e.g.*, Leyla Khodabakhshi, *Christian Converts Are Among the Iranians Being Sent Home from US*, BBC News (Nov. 22, 2025), https://www.bbc.com/news/articles/cdege0k962do.

[14] *Id.*; Wang, *supra* note 5.

[15] David Rohde & Laura Barrón-López, *Trump Administration Plans to Deport 40 Iranians Days After Mass Killings in Iran*, MS NOW (Jan. 23, 2026), https://www.ms.now/news/trump-deport-iranians-ice-dhs-immigration.

despite his insistence that he would be killed upon return.[16] U.S. Immigration and Customs Enforcement arrested at least 432 Iranians in 2025, more than half of whom had neither been convicted of a crime nor were facing any pending criminal charges at the time of their arrest.[17]

6.  Individuals of Christian, Jewish or Baha'i faith are particularly vulnerable. As one prominent Iranian American Christian Pastor has noted about personally witnessing the lethal risk to several Iranian Christian leaders and converts: "their deaths demonstrate a clear pattern of state-tolerated and state-directed persecution of Christian converts and church leaders in Iran.[18] This Christian Pastor further states: "unequivocally… that Iranian Christian converts face a clear and present danger if deported."[19]

7.  To shed light on how this unprecedented arrangement was designed and carried out, on November 19, 2025 the Iranian American Legal Defense Fund submitted Freedom of Information Act ("FOIA") requests—each with a request for expedited processing—to the U.S. Department of State, U.S. Customs and Border Protection, and U.S. Immigration and Customs Enforcement. Each request sought records concerning the diplomatic, legal, and operational coordination underlying the removal, expulsion, or coordinated transfer of Iranian nationals from the United States to the Islamic Republic of Iran.[20]

8.  The agencies have failed to comply with their statutory obligations. The U.S. Department of State denied the request for expedited processing and has issued no determination on the underlying FOIA request or the appeal of that denial. U.S. Customs and Border Protection has

---

[16] Wang, *supra* note 5.
[17] *Id*.
[18] Declaration of Pastor Robak Hoospianmer ¶ 16, attached hereto as Exhibit H.
[19] *Id* at ¶ 47.
[20] Press Release, Iranian Am. Legal Def. Fund, IALDF Files FOIA Requests on U.S. Deportation Flights to Iran, Citing Due Process and Human Rights Concerns (Nov. 19, 2025), https://www.ialdf.org/foia/fr01.

issued no determination on either the expedited-processing request or the underlying FOIA request. U.S. Immigration and Customs Enforcement has issued no determination on the FOIA request despite the grant of expedited processing request on December 10, 2025. Having exhausted available administrative avenues, the Iranian American Legal Defense Fund now brings this action under FOIA, 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. § 2201—2202, to compel the agencies to comply with their statutory obligations.

9.   There is increasing public concern about the United States Government working hand in glove with the Islamic Regime providing asylum seekers to the Islamic Regime on a silver platter.[21] 12 U.S. Senators in a Public Letter to Marco Rubio, U.S. Secretary of State stated "Given Iran's horrific human rights record, we are deeply concerned that the Trump administration is returning people to a country where they may be persecuted or tortured, in violation of U.S. and international law."[22] The State Department responded by acknowledging "[t]his Administration remains clear-eyed about the nature of the Iranian regime. For decades, it has systematically oppressed its citizens through arbitrary detention, coerced confessions, and killing. This is in addition to the persecution of religious minorities and the criminalization of a wide range of conducts deemed by the regime as contrary to its theocratic ideology. These actions are consistent with the regime's broader pattern of destabilizing conduct and disregard for fundamental freedoms. The United States is proud to stand with the people of Iran as they

---

[21] *See* Press Release, Iranian Am. Legal Def. Fund, *IALDF Statement On the Uprisings in Iran and Ongoing Human Rights Violations* (Jan. 12, 2026), https://www.ialdf.org/post/ialdf-statement-on-the-uprisings-in-iran-and-ongoing-human-rights-violations; Press Release, Iranian Am. Legal Def. Fund, *IALDF Investigates ICE Facilities and Files Complaint with the United Nations Regarding Mass Deportations to the Islamic Regime in Iran* (Dec. 17, 2025), https://www.ialdf.org/post/ialdf-investigates-ice-and-files-complaint-with-the-un.
[22] Letter from Tim Kaine et al., U.S. Sens., to Marco Rubio, Sec'y of State (Feb. 11, 2026), https://www.kaine.senate.gov/imo/media/doc/20260211lettertorubiooonirandeportations.pdf.

bravely express their legitimate aspirations for dignity and basic rights," but attributed operational responsibility to the Department of Homeland Security and related agencies.[23] The Secretary of Homeland Security agreed to look into this issue at his confirmation hearing.[24]

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201, and 2202.

11. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) because Plaintiff resides in this district and Defendants are agencies headquartered in this district. Venue is also proper under 28 U.S.C. § 1391(e)(1).

12. Defendant U.S. Department of State denied Iranian American Legal Defense Fund's requests for expedited processing and a fee waiver on December 9, 2025. Iranian American Legal Defense Fund filed a timely administrative appeal of those denials on March 5, 2026. As of the date of this filing, the U.S. Department of State has failed to adjudicate that appeal within the twenty working days required by 5 U.S.C. § 552(a)(6)(A)(ii). The U.S. Department of State has also failed to issue any determination on the underlying FOIA request.

13. Defendant U.S. Customs and Border Protection has failed to issue any determination on Iranian American Legal Defense Fund's FOIA request, has failed to issue any determination on Iranian

---

[23] See Exhibit I, attached.

[24] IALDF, *Committee on Homeland Security and Governmental Affairs - Sen. Blumenthal Mullins Hearing Q2 Segment*, https://vimeo.com/1174976100?fl=ip&fe=ec. Face the Nation, *Markwayne Mullin's Senate confirmation hearing to become Homeland Security secretary | full video*, YouTube, at 2:54:35 (Mar. 18, 2026), https://www.youtube.com/watch?v=zUtGVXuRRBI.

American Legal Defense Fund's request for expedited processing, and has failed to issue any determination on Iranian American Legal Defense Fund's request for a fee waiver.

14. Defendant U.S. Immigration and Customs Enforcement granted Iranian American Legal Defense Fund's request for expedited processing on December 10, 2025, but has failed to comply with the expedited processing timeline by not issuing any determination on Iranian American Legal Defense Fund's FOIA request.

## **PARTIES**

15. Plaintiff Iranian American Legal Defense Fund is a nonpartisan, non-profit section 501(c)(3) organization primarily engaged in empowering, protecting, and defending Iranian Americans through public legal advocacy, government oversight, legal support, and public education. Through research and FOIA requests, Iranian American Legal Defense Fund uses the information gathered, and its analysis of it, to educate the public about the activities and operations of the federal government through reports, published analyses, press releases, and other media. The organization is incorporated under the laws of the District of Columbia. Iranian American Legal Defense Fund is a "person" within the meaning of 5 U.S.C. § 551(2) and has standing to bring this action under FOIA.

16. Defendant U.S. Department of State is a department of the executive branch of the U.S. government headquartered in Washington, D.C., and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). U.S. Department of State has possession, custody, and control of records that Iranian American Legal Defense Fund seeks.

17. Defendant U.S. Customs and Border Protection is a component of the U.S. Department of Homeland Security, which is a department of the executive branch of the U.S. government.

U.S. Customs and Border Protection is headquartered in Washington, D.C., and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). U.S. Customs and Border Protection has possession, custody, and control of records that Iranian American Legal Defense Fund seeks.

18. Defendant U.S. Immigration and Customs Enforcement is a component of the U.S. Department of Homeland Security, which is a department of the executive branch of the U.S. government. U.S. Immigration and Customs Enforcement is headquartered in Washington, D.C., and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). U.S. Immigration and Customs Enforcement has possession, custody, and control of records that Iranian American Legal Defense Fund seeks.

## STATEMENT OF FACTS

19. On November 19, 2025, Iranian American Legal Defense Fund submitted FOIA requests to the U.S. Department of State, U.S. Customs and Border Protection, and U.S. Immigration and Customs Enforcement, each accompanied by requests for expedited processing and fee waivers, seeking categories of records related to the coordination to facilitate the removal, expulsion, or transfer of Iranian nationals from the United States to the Islamic Republic of Iran.

**U.S. Department of State Request**

20. On November 19, 2025, Iranian American Legal Defense Fund submitted a FOIA request to the U.S. Department of State, which was assigned internal tracking number F-2026-03614. A true and correct copy of the FOIA request is attached hereto as Exhibit A. The request sought all records related to the diplomatic, legal, and operational coordination for the removal, expulsion, or coordinated transfer of Iranian nationals from the United States to the Islamic

Republic of Iran, including communications with Iranian government officials, flight manifests, and internal policies governing non-refoulement obligations.

21. On December 9, 2025, the U.S. Department of State issued a determination letter (a true and correct copy of which is attached hereto as Exhibit D) denying Iranian American Legal Defense Fund's requests for expedited processing and a fee waiver.

22. On March 5, 2026, Iranian American Legal Defense Fund filed a timely administrative appeal of the U.S. Department of State's denial of expedited processing and the fee waiver, providing detailed justifications for both. A true and correct copy of the appeal is attached hereto as Exhibit E. As of the date of this filing, more than twenty working days have elapsed since the filing of the appeal, and the U.S. Department of State has failed to issue any determination on the appeal or on the underlying FOIA request.

**U.S. Customs and Border Protection Request**

23. On November 19, 2025, Iranian American Legal Defense Fund submitted a FOIA request with U.S. Customs and Border Protection, a true and correct copy of which is attached hereto as Exhibit B, seeking records generated, modified, or maintained from January 1, 2025 through the date of processing the request. Iranian American Legal Defense Fund submitted the request seeking records related to the removal operations of Iranian nationals. The request specifically focuses on removals conducted in 2025, including those utilizing third-country "Layover Transfers," such as via Qatar. Iranian American Legal Defense Fund asserted that the disclosure of these records is in the significant public interest because it details the specialized and controversial administration of forced removals to a country with high human rights concerns. Iranian American Legal Defense Fund requested expedited processing based on the "compelling need" to mitigate imminent threats to the safety of Iranian nationals and the urgent

requirement to inform the public about the government's compliance with non-refoulement obligations.

24. On November 20, 2025, U.S. Customs and Border Protection acknowledged receipt of the FOIA request and assigned it internal tracking number CBP-FO-2026-023677 (a true and correct copy of the acknowledgment is attached hereto as Exhibit G). U.S. Customs and Border Protection did not rule on Iranian American Legal Defense Fund's requests for expedited processing or a fee waiver.

25. As of the date of this filing, Iranian American Legal Defense Fund has received no further communication from U.S. Customs and Border Protection regarding this FOIA request.

**U.S. Immigration and Customs Enforcement**

26.  On November 19, 2025, the Iranian American Legal Defense Fund submitted a FOIA request to U.S. Immigration and Customs Enforcement, a true and correct copy of which is attached hereto as Exhibit C, requesting records concerning the 2025 removal of Iranian nationals. Specifically, the request targets operational, legal, and financial documentation regarding "Layover Transfers," a method where individuals are deported to the Islamic Republic of Iran via third countries like Qatar. Requested records include flight manifests, passenger data with unique identifiers to protect privacy, and internal policies governing non-refoulement obligations under the Convention Against Torture.

27. On December 10, 2025, U.S. Immigration and Customs Enforcement acknowledged receipt of the FOIA request and granted Iranian American Legal Defense Fund's request for expedited processing. A true and correct copy of the acknowledgment is attached hereto as Exhibit F. Pursuant to 5 U.S.C. § 552(a)(6)(E)(iii), U.S. Immigration and Customs Enforcement was required to process the request as soon as practicable.

28. As of the date of this filing, more than four months have elapsed since U.S. Immigration and Customs Enforcement granted expedited processing, and Iranian American Legal Defense Fund has received no further communication from U.S. Immigration and Customs Enforcement regarding this FOIA request.

**Exhaustion of Administrative Remedies**

29. As of the date of this Complaint, Defendants have failed to: (a) notify the Iranian American Legal Defense Fund of final determinations regarding its FOIA requests, including the scope of responsive records Defendants intend to produce or withhold and the reasons for any withholdings; (b) produce the requested records or demonstrate that the requested records are lawfully exempt from production; (c) in the case of U.S. Customs and Border Protection, issue any determination on the requests for expedited processing or a fee waiver; and (d) in the case of U.S. Department of State, adjudicate the administrative appeal of the denials of expedited processing and a fee waiver within the statutory timeframe.

30. Through Defendants' failure to respond to Iranian American Legal Defense Fund's FOIA requests within the time period required by law, the Iranian American Legal Defense Fund has constructively exhausted its administrative remedies and seeks immediate judicial review. 5 U.S.C. § 552(a)(6)(C)(i).

**COUNT 1 – Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Withholding of Agency Records**
**(All Defendants)**

31. Iranian American Legal Defense Fund repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

32. Iranian American Legal Defense Fund properly requested records within the possession, custody, and control of Defendants pursuant to FOIA, 5 U.S.C. § 552.

33. Defendants are agencies subject to FOIA and are required to determine within twenty working days after receipt of a request whether to comply with such request and to immediately notify the requester of such determination. 5 U.S.C. § 552(a)(6)(A)(i).

34. Defendants have failed to make determination on Iranian American Legal Defense Fund's FOIA requests within the time limits prescribed by FOIA and are wrongfully withholding agency records requested by Iranian American Legal Defense Fund.

35. Defendants' failures to make timely determinations and to produce responsive, non-exempt records violate FOIA, 5 U.S.C. § 552, and applicable regulations.

36. Plaintiff Iranian American Legal Defense Fund is therefore entitled to injunctive and declaratory relief requiring Defendants to promptly conduct searches reasonably calculated to uncover all responsive records, to produce all non-exempt responsive records, and to provide a Vaughn index justifying the withholding of any responsive records claimed to be exempt.

### COUNT 2 – Violation of FOIA, 5 U.S.C. § 552
#### Failure to Grant Expedited Processing
(U.S. Department of State and U.S. Customs and Border Protection)

37. Iranian American Legal Defense Fund repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

38. Iranian American Legal Defense Fund properly requested records within the possession, custody, and control of Defendants.

39. Defendants are agencies subject to FOIA, and they must therefore make reasonable efforts to search for requested records.

40. Defendant U.S. Department of State denied Iranian American Legal Defense Fund's request for expedited processing on December 9, 2025. Iranian American Legal Defense Fund filed a timely administrative appeal on March 5, 2026, which remains unadjudicated beyond the statutory deadline.

41. Defendant U.S. Customs and Border Protection has failed to issue any determination on Iranian American Legal Defense Fund's request for expedited processing.

42. Defendant U.S. Department of State's wrongful denial of expedited processing and failure to timely adjudicate the appeal, and Defendant U.S. Customs and Border Protection's failure to make any determination on the request for expedited processing, violate FOIA, 5 U.S.C. § 552(a)(6)(E), and applicable regulations.

43. Plaintiff Iranian American Legal Defense Fund is therefore entitled to declaratory and injunctive relief requiring Defendant U.S. Department of State and Defendant U.S. Customs and Border Protection to grant expedited processing of Iranian American Legal Defense Fund's FOIA requests and to process those requests as soon as practicable.

## COUNT 3 – Violation of FOIA, 5 U.S.C. § 552
Failure to Comply with Granted Expedited Processing
(U.S. Immigration and Customs Enforcement)

44. Iranian American Legal Defense Fund repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

45. Iranian American Legal Defense Fund properly requested records within the possession, custody, and control of Defendant U.S. Immigration and Customs Enforcement on an expedited basis.

46. Defendant U.S. Immigration and Customs Enforcement granted Iranian American Legal Defense Fund's request for expedited processing on December 10, 2025.

47. Upon granting expedited processing, Defendant U.S. Immigration and Customs Enforcement was required to process Iranian American Legal Defense Fund's FOIA request "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii).

48. As of the date of this filing, more than four months have elapsed since Defendant U.S. Immigration and Customs Enforcement granted expedited processing, and Defendant U.S. Immigration and Customs Enforcement has failed to issue any determination on Iranian American Legal Defense Fund's FOIA request.

49. Defendant U.S. Immigration and Customs Enforcement's failure to process Iranian American Legal Defense Fund's FOIA request in accordance with the expedited processing timeline it granted violates FOIA, 5 U.S.C. § 552(a)(6)(E), and applicable regulations.

50. Plaintiff Iranian American Legal Defense Fund is therefore entitled to declaratory and injunctive relief requiring Defendant U.S. Immigration and Customs Enforcement to process Iranian American Legal Defense Fund's FOIA request as soon as practicable and to produce all non-exempt responsive records.

### **COUNT 4 – Violation of FOIA, 5 U.S.C. § 552**
### **Wrongful Denial of Fee Waiver**
### **(U.S. Department of State)**

51. Iranian American Legal Defense Fund repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

52. Iranian American Legal Defense Fund requested a waiver of all fees associated with its FOIA request to Defendant U.S. Department of State on November 19, 2025, pursuant to 5 U.S.C. §

552(a)(4)(A)(iii) and 22 C.F.R. § 171.16(j)(2)(ii). The U.S. Department of State denied the fee waiver on December 9, 2025.

53. Iranian American Legal Defense Fund filed a timely administrative appeal on March 5, 2026, demonstrating that disclosure is in the public interest and not primarily in the commercial interest of the requester. As of the date of this filing, more than twenty working days have elapsed and the appeal remains unadjudicated.

54. Defendant U.S. Department of State's wrongful denial of the fee waiver and failure to adjudicate the appeal violate FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and applicable regulations.

55. Plaintiff Iranian American Legal Defense Fund is therefore entitled to declaratory and injunctive relief requiring the U.S. Department of State to grant the fee waiver.

### COUNT 5 – Violation of FOIA, 5 U.S.C. § 552
### Failure to Adjudicate Fee Waiver Request
### (U.S. Customs and Border Protection)

56. Iranian American Legal Defense Fund repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

57. Iranian American Legal Defense Fund requested a waiver of all fees associated with its FOIA request to Defendant U.S. Customs and Border Protection on November 19, 2025, pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). As of the date of this filing, Defendant U.S. Customs and Border Protection has failed to issue any determination on Iranian American Legal Defense Fund's request for a fee waiver.

58. Defendant U.S. Customs and Border Protection's failure to adjudicate the fee waiver request violates FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and applicable regulations.

59. Plaintiff Iranian American Legal Defense Fund is therefore entitled to declaratory and injunctive relief requiring Defendant U.S. Customs and Border Protection to adjudicate Iranian American Legal Defense Fund's request for a fee waiver.

## REQUEST FOR RELIEF

WHEREFORE, Iranian American Legal Defense Fund respectfully requests the Court to:

a) Order Defendant U.S. Department of State and Defendant U.S. Customs and Border Protection to grant Iranian American Legal Defense Fund's requests for expedited processing and to process those requests as soon as practicable;

b) Order Defendant U.S. Immigration and Customs Enforcement to comply with its grant of expedited processing and process Iranian American Legal Defense Fund's FOIA request as soon as practicable;

c) Order Defendants to conduct searches reasonably calculated to uncover all records responsive to Iranian American Legal Defense Fund's FOIA requests and to produce, within twenty days of the Court's order or by such other date as the Court deems appropriate, any and all non-exempt records responsive to Iranian American Legal Defense Fund's FOIA requests, along with Vaughn indexes justifying the withholding of any responsive records withheld under claim of exemption;

d) Order Defendant U.S. Department of State to grant Iranian American Legal Defense Fund's request for a fee waiver and order Defendant U.S. Customs and Border Protection to adjudicate Iranian American Legal Defense Fund's request for a fee waiver;

e) Declare that Defendants have violated FOIA, 5 U.S.C. § 552, by failing to comply with the statutory requirements for processing Iranian American Legal Defense Fund's FOIA requests;

f) Award Iranian American Legal Defense Fund the costs of this proceeding, including reasonable attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

g) Grant Iranian American Legal Defense Fund such other relief as the Court deems just and proper.

Dated: April 27 , 2026

Respectfully submitted,

*Iranian American Legal Defense Fund*
*/s/ Ali Rahnama*
Ali Rahnama (#1032695)
Bardia Arasteh (pro hac vice forthcoming)
1901 Pennsylvania Ave NW, STE 900
Washington, DC 20006
Tel: (202) 339-1255
ali.rahnama@ialdf.org
barasteh@ialdf.org
*Counsel for Plaintiff Iranian American Legal Defense Fund*

## **EXHIBIT LIST**

Exhibit A — FOIA Request to U.S. Department of State (November 19, 2025)

Exhibit B — FOIA Request to U.S. Customs and Border Protection (November 19, 2025)

Exhibit C — FOIA Request to U.S. Immigration and Customs Enforcement (November 19, 2025)

Exhibit D — U.S. Department of State Determination Letter (December 9, 2025)

Exhibit E — Administrative Appeal to U.S. Department of State (March 5, 2026)

Exhibit F — U.S. Immigration and Customs Enforcement Acknowledgment Granting Expedited Processing (December 10, 2025)

Exhibit G — U.S. Customs and Border Protection Acknowledgment (November 20, 2025)

Exhibit H — Declaration of Pastor Robak Hoospianmer

Exhibit I — State Department Response Letter (Feb. 27, 2026) to Letter from Tim Kaine et al., U.S. Sens., to Marco Rubio, Sec'y of State (Feb. 11, 2026)