# EXHIBIT A



# FOIA REQUEST FOR STATE DEPARTMENT RECORDS CONCERNING REMOVAL OPERATIONS OF IRANIAN NATIONALS, INCLUDING LAYOVER TRANSFERS VIA QATAR

November 19, 2025

Electronic Submission Via https://pal.foia.state.gov
FOIARequest@state.gov
U.S. Department of State
Information Access Liaison Office, A/SKS/IAP/IAL
2201 C Street N.W., Suite B266
Washington, D.C. 20520-0000

**Re:** FOIA Request for State Department Records Related to Deportation of Iranian Nationals

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and all associated regulations governing the U.S. Department of State (DOS), including 22 C.F.R. Part 171 as implemented in the Foreign Affairs Manual (FAM), the Iranian American Legal Defense Fund ("IALDF") submits this request for records related to the 2025 removal of Iranian nationals, including removals conducted through third-country "Layover Transfers" such as Qatar. The records sought pertain to the highly sensitive diplomatic, legal, and operational coordination undertaken by the DOS to facilitate the removal, expulsion, or coordinated transfer of Iranian nationals from the United States to the Islamic Republic of Iran.

IALDF is a nonprofit, non-commercial public-interest organization engaged in public legal advocacy, government oversight, and public education.

## I.   Timeframe, Target Components, and Defined Terms

### A.  Timeframe and Scope

This request seeks records generated, modified, or maintained from January 1, 2025 through the date of processing this request. The agency's search must be diligent and extend beyond a single centralized repository to include all components likely to hold responsive records concerning removal operations and their associated legal vetting, contracts, and logistics.

The search must be conducted, at minimum, in the following Targeted Bureaus and Offices, which are the likely custodians of the requested records:

- Bureau of Near Eastern Affairs (NEA): Responsible for U.S. foreign policy and diplomacy concerning Iran.

- Bureau of Consular Affairs (CA): Responsible for travel document issuance and post-removal consular support.

- Office of the Legal Adviser (L): Responsible for reviewing CAT compliance and Diplomatic Assurances.

- Bureau of Diplomatic Security (DS): Involved in security vetting and protection of U.S. interests.

- Bureau of Population, Refugees, and Migration (PRM): Involved in asylum and non-refoulement policy review.

- The Executive Secretariat (S/ES): Repository for high-level policy guidance and Action Memoranda.

**B. Definitions**

The Department must utilize the following terms when indexing and retrieving responsive documentation:

1. "Deportee" / "Returned Individual": Any non-U.S. national removed, expelled, or returned from U.S. custody (DHS/ICE or DOJ/EOIR) to the Islamic Republic of Iran between January 1, 2025, and the present date, pursuant to any formal or informal diplomatic agreement.

2. "Removal Operation": Any organized flight, charter, or coordinated transfer of a "Deportee," including all logistical arrangements or communications concerning transit and security to Islamic Republic of Iran, including transfers involving third-country transit points or consular intervention (e.g., layovers in UAE or Qatar).

3. "Diplomatic Assurances" (DAs): Any form of guarantee, commitment, communication, or confirmation, whether internal or external, regarding the treatment, non-detention, or non-torture of a "Deportee" upon arrival in Iran. This term specifically references the U.S. government's obligations under Article 3 of the Convention Against Torture (CAT).

4. "Acceptance Documentation": Any formal or informal instrument (including a "Diplomatic Note," "Note Verbale," or specific "Laissez-Passer" application/issuance records) issued by the Islamic Republic of Iran, or the Swiss Protecting Power or other countries, confirming Iran's acceptance of a "Deportee."

## II.    <u>Requested Records</u>

This section demands documentation revealing the official mechanisms the DOS used to compel or arrange Iran's acceptance of deported nationals, a complex diplomatic action given the lack of formal relations and the hostile nature of the Islamic Republic of Iran.

**Category 1.  Negotiation and Formal Agreements (The Diplomatic Framework)**

The IALDF requests all records detailing the formal or informal agreements that enabled the recent deportations to Iran, a country with which the U.S. lacks formal diplomatic relations.

**Request 1.1:  Removal Agreements and MOUs.**

All preparatory documents, drafts, correspondence, Action Memoranda, and final versions of any formal or informal Memoranda of Understanding (MOU), agreement, or "deal" with the Government of Iran (GOI) or any third party (e.g., Qatar) regarding the mandatory or voluntary repatriation/transfer of Iranian nationals. The Department must provide records detailing the specific terms of the agreement, including any reciprocal actions, concessions, or established mechanisms for verifying the safe treatment of "Deportees."

**Request 1.2:  Diplomatic Processing and Acceptance Documentation.**

All Diplomatic Cables, Note Verbales, email chains, and internal status reports documenting the transactional process of requesting and receiving "Acceptance Documentation" for individual "Deportees," including records sent to or received from the Swiss Protecting Power or other countries.

**Request 1.3:  Aggregated Acceptance Statistics.**

The search must include aggregated statistical data, maintained by Consular Affairs or Near Eastern Affairs, quantifying the volume of requests for "Acceptance Documentation" sent to the GOI (or its proxy) and the volume of documents received, broken down by fiscal year and month from January 1, 2025 to the present.

Table I: Summary of Removal Agreement Documentation

| Data Point | Required Detail | Legal Justification |
|---|---|---|
| **Date of Agreement/MOU with GOI** | Specific date or approximate range | Establishes formal basis for removals |
| **Form of Documentation** | Diplomatic Note, Memorandum of Understanding, etc. | Identifies the specific diplomatic mechanism used |
| **Total Number of Individuals Covered (Sent to Iran)** | Quantification of successful removals/transfers | Scope of the policy implementation |
| **Third Parties Involved** | Confirmation of roles (e.g., Switzerland, Qatar, UAE) | Assesses consular jurisdiction and risk management |

3

**Category 2.    Operational Logistics and Coordination**

This category requests all internal communications, cables, or logistical memoranda detailing coordination between DOS, DHS/ICE, and third-country governments (including layover points such as UAE, Qatar, or others) concerning the scheduling, security, and manifest of "Removal Operations." Specifically, documentation must detail any security vetting procedures or risk assessments undertaken by Diplomatic Security (DS) or other bureaus concerning the national security threat posed by specific "Deportees."

**Category 3.    Policy, Procedures, Guidelines, Legal Vetting, and Non-Refoulement Compliance**

This section targets the critical internal legal analysis used to reconcile deportations with the U.S. obligations under the Convention Against Torture (CAT).

### Request 3.1:   Legal Analysis of Diplomatic Assurances (DAs)

All legal memoranda, opinions, and internal policy guidance generated by the Office of the Legal Adviser (L) addressing the validity and sufficiency of "Diplomatic Assurances" received from the GOI under Article 3 of the CAT.

The records must focus on how the Department reconciled the decision to remove "Deportees" to Iran with the established legal standard that diplomatic assurances are an inadequate guarantee for returns where torture is "endemic"

### Request 3.2:   Policy Use of Country Reports on Human Rights Practices (CRHR) and Asylum Advisory Opinions (AAOs).

All policy guidance, Action Memos, and interagency communications with DHS/USCIS/DOJ concerning the official transmission, interpretation, or suggested utilization of the annual Country Reports on Human Rights Practices (CRHR) for Iran in removal proceedings, particularly relating to Asylum Advisory Opinions (AAOs). This includes any internal discussions on mitigating policy conflicts arising from DOS findings that support asylum claims.


Table II: Non-Refoulement Assessment and Chronology

| Data Point | Required Detail | Legal Justification |
|---|---|---|
| Date(s) of Diplomatic Assurance(s) | Specific dates assurances were received from GOI | Establishes timeliness and specific context of DAs |
| Source of Assurance (GOI/Third Party) | Identify the issuing body and official | Determines the reliability and validity of the guarantee |

4

| Date of Legal Adviser (L) Opinion | Date of internal memo justifying reliance on DAs | Pinpoints the internal legal assessment of CAT compliance |
|---|---|---|
| Date of CRHRP Transmission to DHS/DOJ | Date DOS officially shared CRHRP with immigration agencies | Documents internal coordination and potential contradiction |

**Category 4.    Operational Coordination, Security, and Monitoring**

This category targets the practical execution of removals and the DOS's ability to monitor the safety of those deported to Iran.

**Request 4.1:   Security and Risk Assessments.**

All internal communications (emails, cables, memoranda) detailing coordination between DOS, DHS/ICE, and third-country governments (e.g., Qatar) concerning the scheduling, manifest, security vetting, and risk assessments of the "Removal Operation."

**Request 4.2:   Consular Monitoring Reports.**

All cables, emails, and reports created by the Bureau of Consular Affairs (CA), Bureau of Near Eastern Affairs (NEA), or the Swiss Protecting Power or other governments documenting attempts to monitor or verify the status, welfare, detention, or legal actions taken against specific "Returned Individuals" upon their arrival in Iran.

**Request 4.3:   Reports of Harm**

Any DOS records documenting reports or confirmations of wrongful detention, disappearance, torture, or persecution of any "Deportee" upon their return to the Islamic Republic of Iran, dating from January 2017 to the present.

## III.    Justification for Fee Waiver and Expedited Processing

### A.  Request for Fee Waiver (5 U.S.C. § 552(a)(4)(A))

The IALDF requests a full waiver of all search, review, and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). The information sought directly addresses the conflict between U.S. adherence to absolute international human rights treaty obligations—specifically the Convention Against Torture (CAT) non-refoulement provision—and the practical implementation of U.S. immigration policy towards the GOI, a state the DOS officially labels as exhibiting severe human rights abuses, including torture and arbitrary killings. The documents sought will illuminate the internal diplomatic and legal compromises or procedural mechanisms undertaken to effect removals to a nation with which the U.S. lacks formal diplomatic relations, necessitating the use of the Swiss

5

Protecting Power or other third nation. Public understanding requires transparency regarding whether the Executive Branch's internal policy analysis on endemic human rights conditions in Iran were modified or bypassed when removals were executed, thereby satisfying the public interest standard for a fee waiver.

Disclosure of the requested information is in the public interest because it is highly likely to contribute significantly to public understanding of the government's activities. The records sought will reveal the diplomatic and legal mechanisms used to bypass strained relations with a hostile government and enforce removals to a state with severe, officially documented human rights abuses. The IALDF is a non-commercial entity dedicated to the public dissemination of this information.

### B. Request for Expedited Processing (5 U.S.C. § 552(a)(6)(E))

Expedited processing is requested based on a "compelling need" that meets the statutory standards:

- Imminent Threat to Life or Physical Safety (Humanitarian Standard):
  The denial of prompt access to the records requested under the Categories Diplomatic Assurances and Consular Monitoring "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual". Individuals who have been removed to Iran face the risk of arbitrary detention, torture, and death, confirmed by DOS's own official reports. The immediate disclosure of the terms of the assurances and the status of monitoring is necessary to inform legal intervention and advocacy, which may mitigate the physical safety threat faced by the "Deportees," including the hundreds of additional individuals reportedly slated for removal.

- Urgency to Inform the Public:

  The policy surrounding the Deportation Flights to Iran constitutes a significant and alleged Federal Government activity, involving complex diplomatic negotiations with a hostile state. The public has an urgent need to understand the official justifications for removing individuals to a state where DOS reports torture is endemic. This urgency stems from the immediate impact of the policy on fundamental U.S. legal and human rights commitments, warranting expedited disclosure.

## IV.    Instruction for Processing, Review, and Segregability

The Department must adhere strictly to the following legal requirements:

### A. Certification of Exhaustive Search and Timeliness:

The Department must certify that all custodians in all targeted bureaus have conducted thorough, good-faith searches, including archived electronic and paper records, using all defined terms in this request. The agency must formally confirm or deny the existence of each requested record category. Expedited processing is formally requested and legally justified based on the compelling need criteria detailed in Section III.

6

B. **Instructions for Segregation and Factual Disclosure:**

The Department must strictly adhere to the requirement of separating exempt and non-exempt material (segregability).

1.  Exemption 5 (Deliberative Process Privilege):

    The agency shall segregate and disclose all purely factual material, including, but not limited to: dates, names of senior policy-making officials, specific statistics, and the specific, verbatim content of "Diplomatic Assurances" or "Acceptance Documentation." While pre-decisional advice may be withheld, the underlying facts and materials upon which the policy decision rested must be released. Any withholding under Exemption 5 must specifically address why the factual content cannot be reasonably separated from the privileged communication.

2.  Exemption 1 (National Security and Foreign Policy):

    For any records withheld under Exemption 1 (classified information concerning national defense or foreign policy), the Department must ensure the review is conducted under the strict substantive and procedural requirements of the current Executive Order on Classification. The agency must segment and release all non-classified portions. Furthermore, the agency must apply the judicial standard requiring the declassification and release of information where the operational sensitivity has been lost or where the information has already demonstrably entered the public domain, citing precedent such as ACLU v. Department of State.

3.  Exemption 3 (Statutory Prohibition):

    If Exemption 3 is invoked, the Department must explicitly cite the specific federal statute (e.g., a foreign affairs or intelligence statute) that mandates the withholding. This citation must demonstrate that the law either leaves no discretion for the agency to disclose or establishes specific criteria for withholding particular types of matters.

C. **Requirement for Detailed Vaughn Index:**

In the event of any withholding, redaction, or refusal to process any records, the Department must provide a detailed Vaughn index concurrently with the release of any records. This index must identify the document, date, and originating office; provide a non-conclusory description of the content; and justify the use of each specific exemption for each redaction or withholding, detailing precisely why segregation of non-exempt material was not feasible.

7

## V.    <u>Conclusion</u>

We look forward to your determination on the request for expedited processing within 10 days, and the release of all responsive, non-exempt records within the statutory timeframe. If you have any questions, please contact me at ali.rahnama@ialdf.org or 202-339-1255.

Sincerely,

Ali Rahnama
Executive Director
Iranian American Legal Defense Fund (IALDF)

8