# EXHIBIT E

Appeal of Expedited Processing and Fee Waiver Denial
FOIA Request F-2026-03614

March 5, 2026

VIA EMAIL FOIAAppeals@state.gov
U.S. Department of State
Appeals Office
Information Access Programs (A/SKS/IAP)
2201 C Street, N.W., Suite B266
Washington, D.C. 20520

**Re: Appeal of Expedited Processing and Fee Waiver Denial in FOIA Request F-2026-03614**

Dear Appeals Officer,

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Department of State ("State") regulations at 22 C.F.R. § 171.13, Iranian American Legal Defense Fund ('IALDF') submits this appeal of the determination by State that the expedited processing and fee waiver justification in request F-2026-03614 did not adequately demonstrate a "compelling need" and that a disclosure would not contribute significantly to the interest of the public. Because IALDF's FOIA request both satisfies the statutory requirements for expedited processing and a fee waiver, State should reverse this decision and grant IALDF's request for expedition.

As set forth in detail below, IALDF's FOIA request seeks records pertaining to the full diplomatic and legal framework supporting the deportation operations to Iran, focusing on the specific mechanisms used to compel Iranian acceptance of deported nationals despite the lack of formal relations. This inquiry demands the disclosure of all formal or informal agreements and Memoranda of Understanding—including those mediated by third parties like Qatar—alongside the internal legal vetting conducted by the Office of the Legal Adviser to reconcile these removals with the Convention Against Torture (CAT). Furthermore, the requests target the operational logistics and security vetting coordinated between the State Department and DHS, while specifically demanding "Consular Monitoring Reports" and any documented "Reports of Harm" to determine if the U.S. government has verified the safety or confirmed the persecution, torture, or wrongful detention of individuals following their return to the Islamic Republic.

Consistent with the requirements of 22 C.F.R. § 171.13 and 22 C.F.R. § 171.16(j)(2)(ii), IALDF hereby submits this appeal of the denial of expedited processing and a fee waiver.

## Background

On November 19, 2025, IALDF submitted a FOIA request to the State with internal tracking number STATE-25-1476. See Ex. 1 ("FOIA Request"). Specifically, the request sought: all records generated, modified, or maintained from January 1, 2025, through the date of processing, requiring a diligent search across the Bureaus of Near Eastern Affairs (NEA), Consular Affairs (CA), Diplomatic Security (DS), Population, Refugees, and Migration (PRM), the Office of the Legal Adviser (L), and the Executive Secretariat (S/ES) regarding removal operations to Iran. The

1

scope encompasses the foundational diplomatic framework, including formal MOUs or informal "deals" with the Government of Iran or third-party intermediaries like Qatar, alongside the transactional cables and statistical data used to secure "Acceptance Documentation." Beyond diplomacy, the search targets operational logistics and security vetting coordinated with DHS/ICE and transit countries, as well as the critical legal analysis used to reconcile these removals with Convention Against Torture (CAT) obligations and the perceived sufficiency of Diplomatic Assurances. Finally, the inquiry demands a full accounting of post-removal monitoring and safety verification, specifically seeking any "Reports of Harm"—including wrongful detention or persecution—with a specialized look-back period for these specific reports extending to January 2017.

The FOIA request included an application for expedited process, and the State denied IALDF's expedited processing application. See Ex. 2. State denied the request for expedited processing because the "request does not demonstrate a 'compelling need' for the requested information." Additionally, State denied IALDF's request for a fee waiver because it "does not meet the public interest standard set forth in 22 C.F.R. § 171.16(j)(2)(ii)."

## Argument

Agencies must process FOIA requests on an expedited basis when the requester "demonstrates a compelling need." 5 U.S.C. § 552(a)(6)(E)(i)(I). A compelling need is shown when, e.g., the request is "made by a person primarily engaged in disseminating information" and establishes an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v); see also 22 C.F.R. § 171.12(d)(1)(ii). In evaluating the "urgency to inform," courts consider "at least three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." Al-Fayed v. CIA, 254 F.3d 300, 310 (D.C. Cir. 2001).

Here, the State does not dispute that IALDF is "primarily engaged in disseminating information." See Ex. 2. IALDF intends to analyze and publish the requested records through reports, public briefings, and engagement with journalists and policymakers. And because IALDF has amply demonstrated that there is an urgency to inform the public regarding the potential impact of these deportations, the State is obligated to process IALDF's request on an expedited basis.

### I.   Iranian American Legal Defense Fund's FOIA Request Merits Expedited Processing

First, there can be no dispute that the request, seeking records that would shed light on federal agencies enhancing immigration tactics and vetting procedures, concerns federal government activity.

Next, the matter is one of current exigency and great interest to the American public. Courts look to widespread media interest as evidence of exigency. See Protect Democracy Project, Inc. v. U.S.

2

Dep't of Def., 263 F. Supp. 3d 293, 299 (D.D.C. 2017) (stating that "one need looks no further than the widespread media attention—including by some of the nation's most prominent news outlets" devoted to coverage of the subject of plaintiff's requests in order to determine exigency).

Here, the deportation of Iranian nationals has been the subject of extensive coverage by the nation's most prominent news outlets. See, e.g., Associated Press, *A Second Flight of Iranian Deportees, Carrying 55, Has Left the U.S., Iran Says*, AP News (Dec. 8, 2025), https://apnews.com/article/de2468b08b1eae0bcb97d7da89c28467; The Guardian, *U.S. Deports 120 Iranians Back to Tehran in Trump Immigration Crackdown,* The Guardian (Sept. 30, 2025), https://www.theguardian.com/world/2025/sep/30/iran-says-120-nationals-deported-from-us-will-fly-home-this-week; Reuters, *Iran Awaits Second Plane of Nationals Deported From U.S.*, Reuters (Dec. 7, 2025), https://www.reuters.com/world/middle-east/iran-awaits-second-plane-nationals-deported-us-2025-12-07; The Washington Post, *U.S. to Deport Immigrants to Iran, Tehran Says, Raising Human Rights Concerns*, Washington Post (Sept. 30, 2025), https://www.washingtonpost.com/immigration/2025/09/30/us-iran-deport-immigrants/. This sustained and widespread reporting confirms that the subject of IALDF's request is a matter of significant public concern and current exigency, satisfying the standard articulated in Protect Democracy.

IALDF's Request Also Qualifies for Expedited Processing Under 22 C.F.R. § 171.12(d)(1)(i). Independent of the "urgency to inform" standard, State's regulations provide for expedited processing where the requester demonstrates that a "failure to obtain the requested records on an expedited basis could reasonably be expected to pose a threat to the life or physical safety of an individual." 22 C.F.R. § 171.12(d)(1)(i). That standard is met here.

The State Department's own 2023 Country Reports on Human Rights Practices for Iran—the most recent report available at the time of the original FOIA request—documents that "[s]ignificant human rights issues" in Iran included "unlawful or arbitrary killings by the government; forced disappearance by the government; torture and cruel, inhuman, or degrading treatment or punishment by the government; [and] arbitrary detention." U.S. Dep't of State, 2023 Country Reports on Human Rights Practices: Iran (2024). The report further documents that security forces "tortured and otherwise abused detained persons" and that "impunity remained pervasive throughout all levels of the government and security forces."

The individuals returned to Iran on the deportation flights at issue in this request face precisely these documented risks. Without access to the Diplomatic Assurances—if any—obtained by the U.S. government, and without any publicly available evidence of Consular Monitoring or post-removal safety verification, there is no basis to conclude that returned individuals are protected from the very harms that State itself documents annually. The failure to process these records on an expedited basis could reasonably be expected to pose a direct threat to the life and physical safety of individuals already returned and those imminently slated for removal.

In its initial FOIA Request, IALDF argued expedited disclosure is a legal and humanitarian necessity due to the imminent threat to life and physical safety faced by individuals removed to

3

Iran. Citing the State Department's own documentation of endemic torture and arbitrary detention in the region, IALDF asserts that immediate access to records regarding Diplomatic Assurances and Consular Monitoring is critical for legal advocacy to protect both current deportees and the hundreds more reportedly slated for removal. Furthermore, IALDF asserts that these deportation flights represent a significant federal activity involving secretive negotiations with a hostile state; therefore, the public has an urgent right to understand the official justifications for a policy that appears to conflict with core U.S. human rights commitments and the international principle of non-refoulement.

Since then, the United States has sent an additional two flights of Iranian nationals back to the Islamic Republic, some of whom were seeking asylum. A flight in December 2025 returned 55 individuals and a third flight in January 2026 carried around a dozen people. The public and legal counsel have been denied access to information on deportation flights to the Islamic Republic of Iran, preventing the public from evaluating whether the United States is complying with its obligations under Article 3 of the Convention Against Torture, effectively shielding potential human rights violations from public and judicial scrutiny. Without documented Consular Monitoring or oversight by the Swiss Protecting Power, there remains zero accountability for the safety of these "Returned Individuals" once they enter Iranian custody, raising serious concerns regarding the life and physical safety of individuals returned to Iran.

Last, the consequences of the delay would "compromise a significant recognized interest." The failure to grant expedited processing for these records poses an immediate and irreversible threat to the life and physical safety of individuals returned to a regime where arbitrary detention, torture, and death are documented realities. Without prompt access to the specific terms of Diplomatic Assurances and the status of Consular Monitoring, legal advocates are stripped of the critical information needed to launch interventions that could mitigate these lethal risks. This delay is particularly catastrophic given that hundreds of additional individuals, including those with active asylum claims, are reportedly slated for removal to a state where the Department of State itself acknowledges that torture is endemic.

Furthermore, a lack of expedited disclosure denies the public its urgent right to scrutinize a significant federal activity involving complex, high-stakes negotiations with a hostile state. The current policy has an immediate and profound impact on fundamental U.S. legal and human rights commitments, yet the official justifications for these deportation flights remain shielded from view. By delaying this information, the government effectively prevents timely accountability for a policy that may directly violate the principle of non-refoulement and the Convention Against Torture, preventing meaningful public scrutiny of a significant government policy affecting vulnerable individuals.

The grant of expedited processing here would also be consistent with the treatment of comparable requests by similarly situated organizations. Courts and agencies have routinely recognized that nonprofit organizations dedicated to government transparency satisfy the expedited processing standard when seeking records relating to significant, time-sensitive federal policies. See, e.g.,

*ACLU v. Department of Justice*, 321 F. Supp. 2d 24 (D.D.C. 2004) (expedited processing where public interest in government surveillance was high); *EPIC v. Department of Defense*, 355 F. Supp. 2d 98 (D.D.C. 2004) (expedited processing granted due to urgency to inform the public). Denying expedition here—where the requested records concern an ongoing program of removals to a country State itself identifies as one where torture is endemic—would be inconsistent with the treatment of materially similar requests.

## II. State's Denial of Iranian American Legal Defense Fund's Request for Fee Waiver is Erroneous and Must Be Reversed

IALDF's request satisfies both the statutory criteria and State's regulations for a fee waiver. Requesters qualify for a fee waiver or reduction in fees "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). Because IALDF has no commercial purpose and its request seeks information that will contribute to the public's understanding of governmental operations and activities, including government operations and activities regarding critical foreign policy matters, the request qualifies for a fee waiver. Further, IALDF's request satisfies the regulatory provision on which State relies. See 22 C.F.R. § 171.16(j)(2)(ii).

### A. Disclosure of the Requested Information Would Meaningfully Inform the Public About Government Operations or Activities.

IALDF explained in its request, see Ex. 1, why the following records would "meaningfully inform the public about government operations and activities." 22 C.F.R. § 171.16(j)(2)(ii)(A).

IALDF requested these records in the wake of three deportation flights that returned Iranian nationals—including asylum seekers—to the Islamic Republic of Iran. The requested records would reveal the decision-making framework underlying these removal operations, including: (a) the diplomatic agreements or informal arrangements used to secure Iran's acceptance of returned nationals despite the absence of formal bilateral relations; (b) the legal analysis conducted by the Office of the Legal Adviser to reconcile these removals with obligations under the Convention Against Torture; (c) the operational logistics and security vetting coordinated between State and DHS; and (d) the existence and adequacy of any post-removal monitoring or safety verification mechanisms.

This information is not currently available to the public through any other source. The diplomatic framework governing these removals—including whether Diplomatic Assurances were obtained, their specific terms, and whether any Consular Monitoring is occurring—has not been disclosed by the government. The operational details of how these flights are coordinated with a state with which the United States has no formal diplomatic relations remain entirely opaque. Because these records would shed light on a significant and otherwise undisclosed area of government

5

operations—one that sits at the intersection of immigration enforcement, foreign policy, and international human rights obligations—their disclosure would meaningfully inform the public about government operations and activities within the meaning of 22 C.F.R. § 171.16(j)(2)(ii)(A).

Moreover, the ongoing and expanding nature of these operations heightens the public interest in disclosure. Reports indicate that additional deportation flights are planned, and high-level Iranian officials have confirmed they expect hundreds more nationals to be returned. Public understanding of the government's operational framework is essential to informed civic engagement on a policy that has immediate consequences for U.S. compliance with international treaty obligations.

The request seeks records related to the decision-making and internal deliberations surrounding removal operations to Iran. This inquiry specifically targets the diplomatic framework and legal analysis used to justify these removals. The urgency of this request is underscored by the fact that the United States has recently conducted an additional two flights returning Iranian nationals to the Islamic Republic, including individuals who were actively seeking asylum. Consequently, IALDF demands a full accounting of operational logistics, the perceived sufficiency of Diplomatic Assurances under the Convention Against Torture (CAT), and all post-removal "Reports of Harm" including wrongful detention or persecution extending back to January 2017.

Additionally, IALDF highlights that these operations are not isolated incidents but part of a sustained and expanding campaign, with clear plans for these flights to continue indefinitely. In January 2026, reports emerged of a third major deportation flight scheduled to depart from Arizona, despite a domestic crackdown in Iran that has seen thousands killed or detained. High-level Iranian officials have confirmed that they expect hundreds more of their nationals to be returned under this rare diplomatic arrangement with the U.S. government.

The persistence of these plans underscores the "compelling need" for expedited disclosure, as the window for legal intervention to protect those currently in staging facilities including religious minorities facing potential death sentences is rapidly closing. Without immediate access to the requested records, the government's shift toward normalizing these high-risk removals will proceed without any public or judicial oversight of the logistical networks currently being used to facilitate them.

Disclosure of these communications would allow the public to evaluate the diplomatic negotiations and internal deliberations driving the resumption of deportation flights to a hostile state. This transparency is essential for understanding the factors considered in any deals and their broader impact on vulnerable communities. Ultimately, these records would enable the public to ensure that government actions are not circumventing the fundamental human rights standards the nation purports to defend.

**B. The Disclosure Would Contribute to the Understanding of a Reasonably Broad Audience of Interested Persons.**

IALDF's request meets each of the requirements in the regulation: it is considered a representative of the news media; the records will benefit the public at large; and IALDF shares the records it receives with the public.

First, State's fee waiver denial letter asserts that the request by IALDF does not meet the public interest standard set forth in 22 C.F.R. § 171.16(j)(2)(ii). That conclusion is incorrect. The requested records concern the diplomatic, legal, and operational framework governing deportation flights to Iran—an area of significant public interest involving immigration enforcement, foreign policy, and compliance with international human rights obligations.

Second, in light of the opaque nature of the government's operations and activities, the requested records will likely "contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester." 22 C.F.R. § 171.16(j)(2)(ii)(B).

Third, as explained in IALDF's original request, the organization has amply demonstrated its expertise and "ability and intention to effectively convey information to the public" by creating educational content and substantive analyses of records obtained through oversight. This factor is especially critical here, as the requested records regarding Diplomatic Assurances and Consular Monitoring have never been released to the public. As these records have never been publicly released, their disclosure would represent a significant — rather than merely incremental — contribution to public understanding of government operations, satisfying the heightened standard of 22 C.F.R. § 171.16(j)(2)(ii)(C).

IALDF is committed to the public disclosure of documents and the publication of expert legal analysis. Disclosure of these records would contribute significantly to the public's understanding of federal operations regarding the removal of individuals to hostile states rather than merely serving IALDF's internal understanding.

### C. Iranian American Legal Defense Fund Has No Commercial Interest in the Requests.

Finally, IALDF's FOIA request is not in its financial interests; rather, the request is entirely for non-commercial purposes. As explained in the request, IALDF is a 501(c)(3) nonprofit with the sole mission to promote transparency in government, educate the public about government activities, and ensure the accountability of government officials, and does not have a commercial purpose. See Ex. 1.

Because disclosure would not further any commercial interests of IALDF, the public interest in disclosure necessarily outweighs nonexistent commercial interests, and a fee waiver is therefore justified. See 22 C.F.R. § 171.16(j)(2)(iii).

## **Conclusion**

Iranian American Legal Defense Fund's application for expedited processing demonstrates a "compelling need" because it shows an "urgency to inform the public concerning actual or alleged Federal Government activity." See 5 U.S.C. § 552(a)(6)(E); 22 C.F.R. § 171.12(d)(1)(ii). Additionally, for the foregoing reasons, State should grant IALDF's fee waiver request. Pursuant to 5 U.S.C. § 552(a)(6)(A)(ii), we look forward to your determination on our appeal within twenty working days. IALDF reserves all rights to seek judicial review in the event this appeal is denied or not decided within the statutory timeframe. Please do not hesitate to contact me at (202) 339-1255 or ali.rahnama@ialdf.org with questions regarding any part of this appeal or the underlying request for records.

Sincerely,

Ali Rahnama
Executive Director
Iranian American Legal Defense Fund

## EXHIBIT 1



## FOIA REQUEST FOR STATE DEPARTMENT RECORDS CONCERNING REMOVAL OPERATIONS OF IRANIAN NATIONALS, INCLUDING LAYOVER TRANSFERS VIA QATAR

November 19, 2025

Electronic Submission Via https://pal.foia.state.gov
FOIARequest@state.gov
U.S. Department of State
Information Access Liaison Office, A/SKS/IAP/IAL
2201 C Street N.W., Suite B266
Washington, D.C. 20520-0000

**Re:** FOIA Request for State Department Records Related to Deportation of Iranian Nationals

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and all associated regulations governing the U.S. Department of State (DOS), including 22 C.F.R. Part 171 as implemented in the Foreign Affairs Manual (FAM), the Iranian American Legal Defense Fund ("IALDF") submits this request for records related to the 2025 removal of Iranian nationals, including removals conducted through third-country "Layover Transfers" such as Qatar. The records sought pertain to the highly sensitive diplomatic, legal, and operational coordination undertaken by the DOS to facilitate the removal, expulsion, or coordinated transfer of Iranian nationals from the United States to the Islamic Republic of Iran.

IALDF is a nonprofit, non-commercial public-interest organization engaged in public legal advocacy, government oversight, and public education.

### I. Timeframe, Target Components, and Defined Terms

#### A. Timeframe and Scope

This request seeks records generated, modified, or maintained from January 1, 2025 through the date of processing this request. The agency's search must be diligent and extend beyond a single centralized repository to include all components likely to hold responsive records concerning removal operations and their associated legal vetting, contracts, and logistics.

The search must be conducted, at minimum, in the following Targeted Bureaus and Offices, which are the likely custodians of the requested records:

Appeal of Expedited Processing and Fee Waiver Denial
FOIA Request F-2026-03614

- Bureau of Near Eastern Affairs (NEA): Responsible for U.S. foreign policy and diplomacy concerning Iran.

- Bureau of Consular Affairs (CA): Responsible for travel document issuance and post-removal consular support.

- Office of the Legal Adviser (L): Responsible for reviewing CAT compliance and Diplomatic Assurances.

- Bureau of Diplomatic Security (DS): Involved in security vetting and protection of U.S. interests.

- Bureau of Population, Refugees, and Migration (PRM): Involved in asylum and non-refoulement policy review.

- The Executive Secretariat (S/ES): Repository for high-level policy guidance and Action Memoranda.

### B. Definitions

The Department must utilize the following terms when indexing and retrieving responsive documentation:

1. "Deportee" / "Returned Individual": Any non-U.S. national removed, expelled, or returned from U.S. custody (DHS/ICE or DOJ/EOIR) to the Islamic Republic of Iran between January 1, 2025, and the present date, pursuant to any formal or informal diplomatic agreement.

2. "Removal Operation": Any organized flight, charter, or coordinated transfer of a "Deportee," including all logistical arrangements or communications concerning transit and security to Islamic Republic of Iran, including transfers involving third-country transit points or consular intervention (e.g., layovers in UAE or Qatar).

3. "Diplomatic Assurances" (DAs): Any form of guarantee, commitment, communication, or confirmation, whether internal or external, regarding the treatment, non-detention, or non-torture of a "Deportee" upon arrival in Iran. This term specifically references the U.S. government's obligations under Article 3 of the Convention Against Torture (CAT).

4. "Acceptance Documentation": Any formal or informal instrument (including a "Diplomatic Note," "Note Verbale," or specific "Laissez-Passer" application/issuance records) issued by the Islamic Republic of Iran, or the Swiss Protecting Power or other countries, confirming Iran's acceptance of a "Deportee."

## II. Requested Records

This section demands documentation revealing the official mechanisms the DOS used to compel or arrange Iran's acceptance of deported nationals, a complex diplomatic action given the lack of formal relations and the hostile nature of the Islamic Republic of Iran.

2

10

**Category 1.   Negotiation and Formal Agreements (The Diplomatic Framework)**

The IALDF requests all records detailing the formal or informal agreements that enabled the recent deportations to Iran, a country with which the U.S. lacks formal diplomatic relations.

**Request 1.1:      Removal Agreements and MOUs.**

All preparatory documents, drafts, correspondence, Action Memoranda, and final versions of any formal or informal Memoranda of Understanding (MOU), agreement, or "deal" with the Government of Iran (GOI) or any third party (e.g., Qatar) regarding the mandatory or voluntary repatriation/transfer of Iranian nationals. The Department must provide records detailing the specific terms of the agreement, including any reciprocal actions, concessions, or established mechanisms for verifying the safe treatment of "Deportees."

**Request 1.2:      Diplomatic Processing and Acceptance Documentation.**

All Diplomatic Cables, Note Verbales, email chains, and internal status reports documenting the transactional process of requesting and receiving "Acceptance Documentation" for individual "Deportees," including records sent to or received from the Swiss Protecting Power or other countries.

**Request 1.3:      Aggregated Acceptance Statistics.**

The search must include aggregated statistical data, maintained by Consular Affairs or Near Eastern Affairs, quantifying the volume of requests for "Acceptance Documentation" sent to the GOI (or its proxy) and the volume of documents received, broken down by fiscal year and month from January 1, 2025 to the present.

Table I: Summary of Removal Agreement Documentation

| Data Point | Required Detail | Legal Justification |
|---|---|---|
| **Date of Agreement/MOU with GOI** | Specific date or approximate range | Establishes formal basis for removals |
| **Form of Documentation** | Diplomatic Note, Memorandum of Understanding, etc. | Identifies the specific diplomatic mechanism used |
| **Total Number of Individuals Covered (Sent to Iran)** | Quantification of successful removals/transfers | Scope of the policy implementation |
| **Third Parties Involved** | Confirmation of roles (e.g., Switzerland, Qatar, UAE) | Assesses consular jurisdiction and risk management |

3

**Category 2.    Operational Logistics and Coordination**

This category requests all internal communications, cables, or logistical memoranda detailing coordination between DOS, DHS/ICE, and third-country governments (including layover points such as UAE, Qatar, or others) concerning the scheduling, security, and manifest of "Removal Operations." Specifically, documentation must detail any security vetting procedures or risk assessments undertaken by Diplomatic Security (DS) or other bureaus concerning the national security threat posed by specific "Deportees."

**Category 3.    Policy, Procedures, Guidelines, Legal Vetting, and Non-Refoulement Compliance**

This section targets the critical internal legal analysis used to reconcile deportations with the U.S. obligations under the Convention Against Torture (CAT).

**Request 3.1:   Legal Analysis of Diplomatic Assurances (DAs)**

All legal memoranda, opinions, and internal policy guidance generated by the Office of the Legal Adviser (L) addressing the validity and sufficiency of "Diplomatic Assurances" received from the GOI under Article 3 of the CAT.

The records must focus on how the Department reconciled the decision to remove "Deportees" to Iran with the established legal standard that diplomatic assurances are an inadequate guarantee for returns where torture is "endemic"

**Request 3.2:   Policy Use of Country Reports on Human Rights Practices (CRHR) and Asylum Advisory Opinions (AAOs).**

All policy guidance, Action Memos, and interagency communications with DHS/USCIS/DOJ concerning the official transmission, interpretation, or suggested utilization of the annual Country Reports on Human Rights Practices (CRHR) for Iran in removal proceedings, particularly relating to Asylum Advisory Opinions (AAOs). This includes any internal discussions on mitigating policy conflicts arising from DOS findings that support asylum claims.

Table II: Non-Refoulement Assessment and Chronology

| Data Point | Required Detail | Legal Justification |
|---|---|---|
| Date(s) of Diplomatic Assurance(s) | Specific dates assurances were received from GOI | Establishes timeliness and specific context of DAs |
| Source of Assurance (GOI/Third Party) | Identify the issuing body and official | Determines the reliability and validity of the guarantee |

4

| Date of Legal Adviser (L) Opinion | Date of internal memo justifying reliance on DAs | Pinpoints the internal legal assessment of CAT compliance |
|---|---|---|
| Date of CRHRP Transmission to DHS/DOJ | Date DOS officially shared CRHRP with immigration agencies | Documents internal coordination and potential contradiction |

**Category 4.    Operational Coordination, Security, and Monitoring**

This category targets the practical execution of removals and the DOS's ability to monitor the safety of those deported to Iran.

**Request 4.1:  Security and Risk Assessments.**

All internal communications (emails, cables, memoranda) detailing coordination between DOS, DHS/ICE, and third-country governments (e.g., Qatar) concerning the scheduling, manifest, security vetting, and risk assessments of the "Removal Operation."

**Request 4.2:  Consular Monitoring Reports.**

All cables, emails, and reports created by the Bureau of Consular Affairs (CA), Bureau of Near Eastern Affairs (NEA), or the Swiss Protecting Power or other governments documenting attempts to monitor or verify the status, welfare, detention, or legal actions taken against specific "Returned Individuals" upon their arrival in Iran.

**Request 4.3:  Reports of Harm**

Any DOS records documenting reports or confirmations of wrongful detention, disappearance, torture, or persecution of any "Deportee" upon their return to the Islamic Republic of Iran, dating from January 2017 to the present.

### III.    Justification for Fee Waiver and Expedited Processing

**A.  Request for Fee Waiver (5 U.S.C. § 552(a)(4)(A))**

The IALDF requests a full waiver of all search, review, and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). The information sought directly addresses the conflict between U.S. adherence to absolute international human rights treaty obligations—specifically the Convention Against Torture (CAT) non-refoulement provision—and the practical implementation of U.S. immigration policy towards the GOI, a state the DOS officially labels as exhibiting severe human rights abuses, including torture and arbitrary killings. The documents sought will illuminate the internal diplomatic and legal compromises or procedural mechanisms undertaken to effect removals to a nation with which the U.S. lacks formal diplomatic relations, necessitating the use of the Swiss

5

Appeal of Expedited Processing and Fee Waiver Denial
FOIA Request F-2026-03614

Protecting Power or other third nation. Public understanding requires transparency regarding whether the Executive Branch's internal policy analysis on endemic human rights conditions in Iran were modified or bypassed when removals were executed, thereby satisfying the public interest standard for a fee waiver.

Disclosure of the requested information is in the public interest because it is highly likely to contribute significantly to public understanding of the government's activities. The records sought will reveal the diplomatic and legal mechanisms used to bypass strained relations with a hostile government and enforce removals to a state with severe, officially documented human rights abuses. The IALDF is a non-commercial entity dedicated to the public dissemination of this information.

### B. Request for Expedited Processing (5 U.S.C. § 552(a)(6)(E))

Expedited processing is requested based on a "compelling need" that meets the statutory standards:

- Imminent Threat to Life or Physical Safety (Humanitarian Standard):
  The denial of prompt access to the records requested under the Categories Diplomatic Assurances and Consular Monitoring "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual". Individuals who have been removed to Iran face the risk of arbitrary detention, torture, and death, confirmed by DOS's own official reports. The immediate disclosure of the terms of the assurances and the status of monitoring is necessary to inform legal intervention and advocacy, which may mitigate the physical safety threat faced by the "Deportees," including the hundreds of additional individuals reportedly slated for removal.

- Urgency to Inform the Public:

  The policy surrounding the Deportation Flights to Iran constitutes a significant and alleged Federal Government activity, involving complex diplomatic negotiations with a hostile state. The public has an urgent need to understand the official justifications for removing individuals to a state where DOS reports torture is endemic. This urgency stems from the immediate impact of the policy on fundamental U.S. legal and human rights commitments, warranting expedited disclosure.

## IV.  Instruction for Processing, Review, and Segregability

The Department must adhere strictly to the following legal requirements:

### A. Certification of Exhaustive Search and Timeliness:

The Department must certify that all custodians in all targeted bureaus have conducted thorough, good-faith searches, including archived electronic and paper records, using all defined terms in this request. The agency must formally confirm or deny the existence of each requested record category. Expedited processing is formally requested and legally justified based on the compelling need criteria detailed in Section III.

6

14

Appeal of Expedited Processing and Fee Waiver Denial
FOIA Request F-2026-03614

B. **Instructions for Segregation and Factual Disclosure:**

The Department must strictly adhere to the requirement of separating exempt and non-exempt material (segregability).

1. Exemption 5 (Deliberative Process Privilege):

   The agency shall segregate and disclose all purely factual material, including, but not limited to: dates, names of senior policy-making officials, specific statistics, and the specific, verbatim content of "Diplomatic Assurances" or "Acceptance Documentation." While pre-decisional advice may be withheld, the underlying facts and materials upon which the policy decision rested must be released. Any withholding under Exemption 5 must specifically address why the factual content cannot be reasonably separated from the privileged communication.

2. Exemption 1 (National Security and Foreign Policy):

   For any records withheld under Exemption 1 (classified information concerning national defense or foreign policy), the Department must ensure the review is conducted under the strict substantive and procedural requirements of the current Executive Order on Classification. The agency must segment and release all non-classified portions. Furthermore, the agency must apply the judicial standard requiring the declassification and release of information where the operational sensitivity has been lost or where the information has already demonstrably entered the public domain, citing precedent such as ACLU v. Department of State.

3. Exemption 3 (Statutory Prohibition):

   If Exemption 3 is invoked, the Department must explicitly cite the specific federal statute (e.g., a foreign affairs or intelligence statute) that mandates the withholding. This citation must demonstrate that the law either leaves no discretion for the agency to disclose or establishes specific criteria for withholding particular types of matters.

C. **Requirement for Detailed Vaughn Index:**

In the event of any withholding, redaction, or refusal to process any records, the Department must provide a detailed Vaughn index concurrently with the release of any records. This index must identify the document, date, and originating office; provide a non-conclusory description of the content; and justify the use of each specific exemption for each redaction or withholding, detailing precisely why segregation of non-exempt material was not feasible.

7

**V.    Conclusion**

We look forward to your determination on the request for expedited processing within 10 days, and the release of all responsive, non-exempt records within the statutory timeframe. If you have any questions, please contact me at ali.rahnama@ialdf.org or 202-339-1255.

Sincerely,

Ali Rahnama
Executive Director
Iranian American Legal Defense Fund (IALDF)

8

Appeal of Expedited Processing and Fee Waiver Denial
FOIA Request F-2026-03614

# EXHIBIT 2



**United States Department of State**

*Washington, D.C.   20520*

December 9, 2025

Request No.: F-2026-03614

Mr. Ali Rahnama
Iranian American Legal Defense Fund
***Sent via email:*** *admin@ialdf.org*

Dear Ali Rahnama:

This letter acknowledges receipt of your Freedom of Information Act (FOIA) request received by the U.S. Department of State, Information Access Programs Directorate on November 19, 2025. This Office assigned your request the subject reference number and placed it in the complex processing track where it will be processed as quickly as possible.

This Office will not be able to respond within the 20 days provided by the statute due to "unusual circumstances."  In this instance, the unusual circumstances include the need to search for and collect requested records from other Department offices or Foreign Service posts.

You requested expedited processing of this request.  According to 22 CFR 171.12(d), requests shall receive expedited processing when a requester demonstrates a "compelling need" for the information exists for one of the following reasons: (1) failure to obtain the requested information on an expedited basis could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; (2) the information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal government activity; or (3) failure to release the information would impair substantial due process rights or harm substantial humanitarian interests.  Your request does not demonstrate a "compelling need" for the requested information.  Therefore, this Office denies your request for expedited processing.

Appeal of Expedited Processing and Fee Waiver Denial
FOIA Request F-2026-03614

**Fee Waiver Determination.** You requested a waiver for all fees associated with the processing of your request.  Fees shall be waived or in rare cases; perhaps involving exceptional burden or expenditure of public resources in the context of a request that minimally satisfies the "public interest" requirement, it may be possible to give effect to the language of the statute providing for "a charge reduced below the  fees" by granting a reduction rather than a complete waiver of fees, if the Department determines that disclosure is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.  Your request does not meet the public interest standard set forth in § 22 CFR 171.16(j)(2)(ii).  Therefore, this Office denies your request for a fee waiver.

**Fee Category Determination.** The Department has determined that you fall within the "All Other Requesters" fee category.  All Other requesters are charged fees which recover the full reasonable direct cost of searching for and reproducing records that are responsive to the request. Except that the first 100 pages of reproduction and the first two hours of search time shall be furnished without charge. OMB's Uniform Freedom of Information Act (FOIA) Fee Schedule and Guidelines allow agencies to recover the "reasonable direct cost of duplication" for all fee categories of FOIA requesters.  The term "duplication" refers to "the process of making a copy of a document necessary to respond to a FOIA request."  Department of State FOIA regulations, 22 CFR Part 171.16(b), define "direct costs" as "those expenses the Department incurs…duplicating…in response to a FOIA request. For example, direct costs include the salary of the employee performing the work (i.e., the basic rate of pay for the employee, plus 16 percent of that rate to cover benefits) and the cost of operating computers and other electronic equipment, such as photocopiers and scanners. The term does not include overhead expenses such as the costs of space and of heating or lighting of a facility."

If you have any questions regarding your request, would like to narrow the scope or arrange an alternative time frame to speed its processing, or would like an estimated date of completion, please contact Michael R. , at FOIA_Inquiry@state.gov or our FOIA Public Liaison via email at FOIAStatus@state.gov or telephone at (202) 261-8484.

18

Appeal of Expedited Processing and Fee Waiver Denial
FOIA Request F-2026-03614

If you are not satisfied with this determination, you may administratively appeal by writing to: Appeals Officer, Information Access Programs Directorate (A/SKS/IAP), U.S. Department of State, 2201 C Street, NW, Washington, D.C. 20520; by fax to (202) 485-1718; or by email to FOIAAppeals@state.gov.  Your appeal must be postmarked or electronically transmitted within 90 days of the date of this correspondence.  Please include a copy of this correspondence with your written appeal and clearly state why you disagree with the determinations set forth in this response.

Additionally, if you are not satisfied with the Department's determination in response to your request, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration (NARA) to inquire about the FOIA Mediation Services they offer.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, email address: ogis@nara.gov; telephone: (202) 741-5770; toll free number: 1-877-684-6448

Sincerely,

*Megan Farrell*

Megan Farrell
Lead Government Information Specialist
FOIA Case Processing Office
Information Access Programs Directorate

Enclosures: As stated herein

19